# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SANDRA PEREA, on behalf of,
JOSHUA PEREA,

    Plaintiff,

v.                                                                                                                      No. 98cv0088 MV/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

      This matter comes before the Court upon Plaintiff's (Perea's) Motion to Reverse or Remand Administrative Decision, filed September 21, 1998. Perea brings this action on behalf of her son, Joshua Perea (Joshua). The Commissioner denied Perea's application for supplemental security income. Perea alleges Joshua, born June 17, 1984, has been disabled since October 1, 1993, due to learning, behavioral and communicative problems.

      The Commissioner denied Perea's application both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Joshua was not a disabled child within the meaning of the Social Security Act. The Appeals Council denied Perea's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Perea seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).

Perea contends the ALJ's findings regarding the issue of whether Joshua's impairments were functionally equivalent to a listed impairment are not supported by substantial evidence.

The law in effect at the time the ALJ issued his decision required the decision maker to apply a four step analysis. *See* 42 U.S.C. § 1382c(a)(3)(A)(1993), as implemented by 20 C.F.R. § 416.924(b)(1993). Accordingly, in this case, the ALJ first inquired whether Joshua engaged in substantial gainful activity. 20 C.F.R. § 416.924(c). The ALJ determined he had not, so the analysis proceeded to the second step. At the second step, the ALJ asked whether he suffered from a severe impairment. 20 C.F.R. § 416.924(d). Since the ALJ found he suffered from the severe impairment of attention deficit disorder, inquiry proceeded to the third step. At the third step, the ALJ inquired whether the impairments were medically or functionally equivalent to a listed impairment. 20 C.F.R. § 416.924(e). At the third step, the ALJ determined Joshua's impairments did not meet or equal a listing.

The analysis then proceeded to the fourth and final step. At the fourth step, the ALJ performed an individualized functional assessment to determine whether Joshua had an impairment or combination of impairments of comparable severity to that which would prevent an adult from

engaging in substantial gainful activity. 20 C.F.R. § 416.924(f). The ALJ determined Joshua's impairments would not be of comparable severity to an impairment which would disable an adult. Thus, the ALJ concluded Joshua was not a disabled child within the meaning of the Social Security Act.

After the ALJ issued his decision, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. No. 104-193, 110 Stat. 2105. The Act amended the applicable standard for evaluating children's disability claims, 42 U.S.C. § 1382c(a)(3)(C), to read as follows:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which has lasted or can be expected to last for a continuous period of not less than 12 months.

In effect, the amended Act eliminates the fourth step of the analysis. The implementing regulations reflect this change by providing that if the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). The new version of the Act applies to all cases which have not been finally adjudicated as of the effective date of August 22, 1996. *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997). The instant case was not finally adjudicated as of that date. Therefore, the new law applies to this case. In reviewing the Commissioner's decision, it is therefore necessary only to review the first three steps of the analysis. *Id.*

The record reveals Joshua qualified for C level special education. Administrative Record (AR) 99. On May 5, 1994, Selma Klein, M.A. performed a consultative speech and language evaluation. AR 155-159. Ms. Klein found Joshua's total language was one plus standard deviation below the

3

mean and almost one and one half standard deviations below his IQ of 102. AR 156. Listening ability was found to be in the average range. *Id.* The speaking quotient was found to be two standard deviations below the mean and revealed very poor expressive language skills, indicating Joshua was unable to formulate his ideas and organize them to deliver them verbally. *Id.* His semantic quotient was in the below average range, indicating a poor comprehension and use of words. AR 157. Ms. Klein concluded Joshua performed well below his expectancy. AR 158. She recommended he have a complete neurological evaluation and receive speech and language remediation. AR 159.

On May 10, 1994, Dr. Scott Blackwell performed a psychological evaluation. AR 160. After noting the results of evaluation offered mixed support for attentional problems, Dr. Blackwell concluded Joshua suffered from a mild attention deficit hyperactivity disorder and significant learning disabilities. AR 164. He diagnosed attention deficit hyperactivity disorder, adjustment disorder with disturbance of emotions and conduct, as well as specific learning disabilities. AR 165. Dr. Blackwell recommended Joshua be referred to his pediatrician for a trial dosage of medication for attention deficit disorder. *Id.* He also recommended Joshua and his mother continue counseling in order to deal with disciplining and possible adjustment problems. Id. Finally, Dr. Blackwell also recommended that Joshua continue with special education classes and possibly speech and language therapy. *Id.*

On September 16, 1994, Perea reported Ritalin helped Joshua control his impulses and anger. AR 167. Ms. Quinn, Joshua's teacher, stated he was easily distracted and unable to read or write. AR 179. Another teacher, Ms. Northcutt, wrote while Joshua learned skills very slowly and required a lot of repetition, he tried hard and worked well in a small group environment. AR 181. Ms. Polson, another teacher, wrote Joshua was in special education 90% of the school day, functioned well socially and seemed to prefer working on a one-on-one basis. AR 183.

Mr. Owens, an educational diagnostician at Joshua's school wrote while Joshua's IQ was in the mid-average range, testing revealed severe academic deficits in the areas of reading and written language. AR. 184. Ms. Mandagaran, Joshua's tutor, wrote that she noticed he had a short attention span and difficulty with his long-term memory. AR 186. Ms. Mandagaran also stated Joshua would need tutorial help during the course of his education. *Id.*

On October 28, 1994, Dr. Vigil performed a neurological examination at the request of Dr. Valdivia, Joshua's treating physician. AR 193. The neurological examination was normal. AR 194. Dr. Vigil ordered thyroid function studies, a CT scan, and an EEG in order to rule out organic causes for Joshua's problems. *Id.* The test results were all normal. AR 195-97.

At the hearing of October 13, 1994, Perea testified in response to questions from his attorney that he thought about killing himself about every month. AR 206-07. However, in response to questioning from the ALJ, Joshua testified he had never tried to kill himself. AR 206. Perea testified Joshua had attention deficit disorder and was unable to read. AR 209. Joshua had a short attention span and tended to act on impulse. AR 210. He had trouble concentrating and suffered from depression. *Id.* Perea testified Joshua had been prescribed Ritalin which was helping him and his concentration was better. AR 211-12. Joshua was in special education for four and a half hours a day, attended speech therapy, and saw his doctor about every three months AR. 212.

Perea contends substantial evidence does not support the ALJ's determination that Joshua's impairments were not functionally equivalent to the listings. Functional equivalence requires an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning. 20 C.F.R. § 416.926a(c). An extreme limitation means no meaningful functioning in a given area, and a marked limitation is one which seriously interferes with the child's functioning. 20 C.F.R. §

5

416.926a(c)(3). Perea argues Joshua is functionally equivalent to the listings because he has marked limitations in the communicative/cognitive function and in the concentration, persistence and pace function.

The ALJ determined Joshua had a less than moderate limitation in the area of cognitive functioning. The record establishes Joshua's IQ scores were in the mid-average range, he was making progress at school, and his neurological examination was normal. Although Mr. Owen stated Joshua's teachers reported very little progress, his report cards reflect consistent progress. The ALJ properly assessed the opinion of Kenneth Owen. *Castellano v. Secretary of Health & Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ's determination that Joshua had a less than moderate limitation in the area of cognitive functioning is supported by substantial evidence under the functional equivalence standard.

The ALJ determined Joshua had a moderate limitation in the area of communicative functioning. Ms. Klein found very poor expressive language skills and concluded Joshua performed well below expectancy. However, Joshua's report cards indicate he was performing satisfactorily in school. While he learned skills very slowly and he required a lot of repetition, he tried hard and worked well in a small group environment. Thus, the ALJ's determination that Joshua had a moderate limitation in the area of communicative functioning is supported by substantial evidence.

The ALJ found Joshua had a less than moderate restriction in the area of concentration, persistence and pace. Joshua's school records indicate he received satisfactory grades and was able to make progress when allowed to work at his own pace. The record also indicates improvement with medication, tutoring and special education. Substantial evidence thus supports the ALJ's determination that Joshua has a less than moderate restriction in the area of concentration, persistence

and pace.

## RECOMMENDED DISPOSITION

The ALJ applied correct legal standards and substantial evidence supports the decision. The motion to reverse or remand for a rehearing should be denied and this case should be dismissed.

_____
JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within ten days after a party is served with a copy of these amended proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such amended proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the amended proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.